IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:  INTRAMTA SWITCHED ACCESS   §
CHARGES LITIGATION                 §
                                   §   Civil Action No. 3:14-MD-2587-D
                                   §   (MDL No. 2587)
THIS DOCUMENT RELATES TO           §
ALL CASES                          §

**APPENDIX TO DEFENDANT LECS' JOINT RULE 12(b)(6) MOTION TO DISMISS**

    Douglas P. Lobel
    David A. Vogel
    **COOLEY LLP**
    One Freedom Square | Reston Town Center
    11951 Freedom Dr.
    Reston, Virginia  20190
    (703) 456-8000  Telephone
    (703) 456-8100  Facsimile
    dlobel@cooley.com
    dvogel@cooley.com

    Michael P. Lynn, P.C.
    Christopher J. Akin
    **LYNN TILLOTSON PINKER & COX, L.L.P.**
    2100 Ross Avenue, Suite 2700
    Dallas, Texas  75201
    (214) 981-3800  Telephone
    (214) 981-3839  Facsimile
    mlynn@lynnllp.com
    cakin@lynnllp.com

    *Counsel for* CenturyLink Affiliates

    *Lead and Liaison Counsel for* Defendant LECs

    On Behalf Of All Defendant LECs
    (*Except As Otherwise Indicated*)

Dated:  May 1, 2015

## STATE AUTHORITIES IN IMPLIED CONTRACTS

**Alabama**: *City of Huntsville v. Stove House 5, Inc.*, 3 So. 3d 186, 193 (Ala. 2008) ("This Court recognizes that '[a]n implied contract arises where there are circumstances which, according to the ordinary course of dealing and common understanding, show a mutual intent to contract . . . .'" (quoting *Broyles v. Brown Eng'g Co.*, 151 So. 2d 767, 770 (Ala. 1963) (listing several circumstances under which Alabama courts have recognized implied contracts))).

**Arizona**: *Swingle v. Myerson*, 509 P.2d 738, 740 (Ariz. Ct. App. 1973) ("There is no difference in the legal effect between an express contract and an implied contract. . . . [I]f such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and the circumstances, then the contract is an implied one.").

**Arkansas**: *Steed v. Busby*, 593 S.W.2d 34, 38 (Ark. 1980) ("The first type of implied contract is sometimes called a contract implied in fact and it derives from the 'presumed' intention of the parties as indicated by their conduct. In determining whether a 'tacit' but actual contract exists, the prior course of dealing between the parties is to be considered. An implied contract is proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties.").

**California**: The implied contract doctrine is recognized in California by statute and confirmed by judicial opinions. Cal. Civil Code § 1619 provides: "A contract is either express or implied." Cal. Civil Code § 1621 provides: "An implied contract is one, the existence and terms of which are manifested by conduct." The California Court of Appeal has held, "[u]nlike the 'quasi-contractual' quantum meruit theory which operates without an actual agreement of the parties, an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." (*Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (Cal. Ct. App. 1998)). Similarly, the court has stated, "[w]hether or not an implied contract has been created is determined by the acts and conduct of the parties and all the surrounding circumstances involved and is a question of fact." (*Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 611 (Cal. Ct. App. 1981)). *See also Retired Emps. Ass'n. of Orange Cnty., Inc. v. Cnty. of Orange*, 266 P.3d 287, 290 (Cal. 2011) ("Accordingly, a contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" (citation omitted)); 1 B.E. Witkin, Summary of California Law, Contracts § 102 (10th ed. 2005).

**Colorado**: *Osband v. United Airlines, Inc.*, 981 P.2d 616, 621 (Colo. App. 1998) ("[A] contract implied in fact is based on the conduct of the parties to the agreement and it is the conduct itself which establishes the agreement. . . . A contract implied in fact arises from the parties' conduct which evidences a mutual intention to enter into a contract. In both cases, a contract is created by the meeting of the minds to contract with each other."), *cited with approval by Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001).

**District of Columbia**: *Steuart Inv. Co. v. Meyer Grp. Ltd.*, 61 A.3d 1227, 1233 (D.C. 2013) (Under District of Columbia law, an implied-in-fact contract is "'a true contract, containing all necessary elements of a binding agreement'" that "'is inferred from the conduct of

1

the parties in the milieu in which they dealt.'") (quoting *Vereen v. Clayborne*, 623 A.2d 1190, 1192 (D.C. 1993)); *see also Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973) (same).

**Delaware**: *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002) (recognizing an implied contract replaced an express contract when management company continued managing property after the initial contract expired); *Creditors' Comm. of Essex Builders, Inc. v. Farmers Bank*, 251 A.2d 546, 548 (Del. 1969) ("A contract will be implied in fact only when the Court may fairly infer such an intent from the evidence; it represents the presumed intention of the parties as indicated by their conduct.").

**Florida**: *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385-86 (Fla. Dist. Ct. App. 1997) (explaining that a contract implied in fact arises when their conduct indicates the parties reached an unspoken agreement).

**Georgia**: Ga. Code Ann. § 9-2-7 ("Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."); *Krofft Dev. Corp. v. Quo Modo, Inc.*, 280 S.E.2d 368, 370 (Ga. Ct. App. 1981) (recognizing that an implied in fact contract can exist where there is the receipt and acceptance of benefit from one party by another).

**Idaho**: *Fox v. Mountain W. Elec., Inc.*, 52 P.3d 848, 853 (Idaho 2002) ("'An implied in fact contract is defined as one where the terms and existence of the contract are manifested by the conduct of the parties with the request of one party and the performance by the other often being inferred from the circumstances attending the performance.'" (quoting *Farnworth v. Femling*, 869 P.2d 1378, 1382 (Idaho 1994))).

**Illinois**: *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952, 956 (7th Cir. 2002) ("Instead, 'an implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt.'" (quoting *Overseas Dev. Disc Corp. v. Sangano Const. Co.*, 840 F.2d 1319, 1330 (7th Cir. 1998))); *People v. Dummer*, 113 N.E. 934, 935 (Ill. 1916) ("A contract may be implied where an agreement in fact is presumed from the acts of the parties, and this is the proper meaning of an implied contract. An illustration of such a contract is where one performs services for another under circumstances showing that they were not intended to be gratuitous and the services are accepted.").

**Indiana**: *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 30-31 (Ind. 1999) ("Contracts and covenants implied in fact arise from the course of dealing between the parties and may be evidenced by acts done in the course of performance or by ordinary practices in the trade."); *McCart v. CEO in Charge, Indep. Fed. Credit Union*, 652 N.E.2d 80, 85 (Ind. Ct. App. 1995) ("An implied in fact contract refers to the class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. . . . [A] contract implied in fact arises out of acts and conduct of the parties, coupled with a meeting of the minds and a clear intent of the parties in the agreement.").

2

**Iowa**: *Scott v. Grinnell Mut. Reinsurance Co.*, 653 N.W.2d 556, 562 (Iowa 2002) ("An implied contract . . . requires proof of an agreement that is inferred in whole or in part from expressions other than words on the part of the promisor." (internal quotation marks and citation omitted)); *Duhme v. Duhme*, 260 N.W.2d 415, 419 (Iowa 1977) (a contract may be express or implied by the conduct of the parties, and both are true contracts); *Ringland-Johnson-Crowley Co. v. First Cent. Serv. Corp.*, 255 N.W.2d 149, 152 (Iowa 1977) (same); *Rucker v. Taylor*, 828 N.W.2d 595, 601-02 (Iowa 2013) (same and citing *Ringland-Johnson-Crowley Co.*).

**Kansas**: *Atchison Cnty. Farmers Union Co-op Ass'n v. Turnbull*, 736 P.2d 917, 922-23 (Kan. 1987) (implied contract formed by repeated purchases); *Nature's Share, Inc. v. Kutter Prods., Inc.*, 752 F. Supp. 371, 378 (D. Kan. 1990) (correspondence recognizing services plus payment); *Adams Parker Furniture, Inc. v. Ethan Allen, Inc.*, No. 86-2113-T, 1988 WL 235667, at *3 (D. Kan. Aug. 16, 1988) (twenty-year "informal" distributor relationship formed enforceable contract).

**Kentucky**: *Victor's Ex'r v. Monson*, 283 S.W.2d 175, 176-77 (Ky. 1955) ("[I]f the proven facts and circumstances are such as to fairly show that both the party rendering the services or furnishing the necessities and the one receiving them expected, understood and intended compensation should be paid, the court or the jury trying the case will be authorized to find an express contract for payment was entered into. This particular type of agreement is denominated a 'contract implied in fact;' it differs from an 'express contract' only in the mode of proof required; and it is implied only in that it is to be inferred from the circumstances, the conduct, and the acts or relations of the parties, rather than from their spoken words. In short, from the evidence disclosed the court may conclude the parties entered into an agreement, although there is no proof of an express offer and a definite acceptance.") (citations omitted).

**Louisiana**: *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So. 2d 569, 573 (La. 1989) ("At the very least an implied in fact contract existed between the parties. An implied in fact contract is one which rests upon consent implied from facts and circumstances showing mutual intention to contract.").

**Maryland**: *Alternatives Unlimited, Inc. v. New Balt. City Bd. of School Comm'rs*, 843 A.2d 252, 289 (Md. Ct. Spec. App. 2004) ("A contract implied in fact is actually a contract."); *Mogavero v. Silverstein*, 790 A.2d 43, 52 (Md. Ct. Spec. App. 2002) ("An implied-in-fact contract is a true contract and means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words. Implied-in-fact contracts are dependent on mutual agreement or consent, and on the intention of the parties; and a meeting of the minds is required.") (internal quotation marks and citations omitted).

**Massachusetts**: *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 460 (D. Mass. 2011) ("An implied-in-fact contract comes into being when, not withstanding the absence of a written or verbal agreement, the conduct or relations of the parties imply the existence of a contract. Otherwise expressed, if a person knowingly receives services and other benefits, and there is no evidence that those services and benefits were being furnished gratuitously, the law implies a promise to pay the value of those services and benefits. To allege an implied-in-fact contract, a plaintiff must plead the elements of an express contract, including consideration, mutual assent, and damages.") (internal quotation marks and citation omitted), *aff'd*, 672 F.3d 64 (1st Cir.

3

2012); *LiDonni, Inc. v. Hart*, 246 N.E.2d 446, 449 (Mass. 1969) ("In the absence of an express agreement, a contract implied in fact may be found to exist from the conduct and relations of the parties.") (citing *W. A. Snow Iron Works, Inc. v. Chadwick*, 116 N.E. 801; *T.F. v. B.L.*, 813 N.E.2d 1244, 1249 (Mass. 2004) ("In the absence of an express agreement, an implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties. An implied contract requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for that benefit.") (citations omitted)).

**Michigan**: *Erikson v. Goodell Oil Co.*, 180 N.W.2d 798, 800 (Mich. 1970) ("A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.").

**Minnesota**: *Capital Warehouse Co. v. McGill-Warner-Farnham Co.*, 149 N.W.2d 31, 35-36 (Minn. 1967) ("Conduct may often convey as clearly as words a promise or an assent to a proposed promise, and where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4) partly in one of these ways and partly in others." (quoting *Benedict v. Pfunder*, 237 N.W. 2, 4 (Minn. 1931))); *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820 ADM/JSM, 2012 WL 3288487, at *4 (D. Minn. Aug. 10, 2010) (contract can be inferred from the circumstances and conduct of the parties).

**Mississippi**: *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 120 (Miss. 2003) ("A contract that arises from the conduct of the parties, also known as a contract implied in fact, has the same legal effect as an express contract."); *Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co.*, 342 So. 2d 1308, 1312 (Miss. 1977) ("A promise which is implied in fact is merely a tacit promise, one which is inferred in whole or in part from the expressions other than words by the promisor . . . .").

**Missouri**: *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 528-29 (Mo. Ct. App. 2008) ("The parties' actions must support a reasonable inference of mutual understanding and agreement that one party perform and the other party compensate for such performance."); *Kosher Zion Sausage Co. of Chi. v. Roodman's, Inc.*, 442 S.W.2d 543, 546 (Mo. Ct. App. 1969) ("[W]here the circumstances and the acts and conduct of the parties support a reasonable inference of a mutual understanding and agreement that one party perform and that the other party compensate for such performance."); *Roper v. Clanton*, 258 S.W.2d 283, 288 (Mo. Ct. App. 1953) ("The agreement between the parties arises from their intention implied or presumed from their acts where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.").

**Montana**: Mont. Code Ann. § 28-2-103 ("A contract is either express or implied. An express contract is one the terms of which are stated in words. An implied contract is one the existence and terms of which are manifested by conduct."); *Sayler v. Mont. Dep't of Labor &*

4

*Indus., Ins. Div.*, 2014 MT 255, ¶ 18-19, 376 Mont. 369, 373, 336 P.3d 358, 361 (implied contract where a business owner worked without salary because he had an expectation of collecting profits in exchange for his effort).

**Nebraska**: *Hoeft v. Five Points Bank*, 539 N.W.2d 637, 644 (Neb. 1995) (quoting *Lindsay Ins. Agency v. Mead*, 508 N.W.2d 820, 825 (Neb. 1993)) ("A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all of the details of the proposed agreement; it may be implied from conduct and the surrounding circumstances."); *Linscott v. Shasteen*, 847 N.W.2d 283, 289-90 (Neb. 2014) ("The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction."); *City of Scottsbluff v. Waste Connections of Neb.*, 809 N.W.2d 725, 737 (Neb. 2011) ("If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract.").

**Nevada**: *Magnum Opes Const. v. Sanpete Steel Corp.*, No. 60016, 2013 WL 7158997, at *2 (Nev. Nov. 1, 2013) (affirming verdict on implied contract); *Smith v. Recrion Corp.*, 541 P.2d 663, 664-65 (Nev. 1975) (holding that implied contracts require evidence that both parties intended to make an agreement).

**New Jersey**: *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) ("Thus, contracts implied in fact are no different than express contracts, although they exhibit a different way or form of expressing assent than through statements or writings. Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances.").

**New Mexico**: *Gordon v. N.M. Title Co.*, 421 P.2d 433, 434 (N.M. 1966) ("Unquestionably, custom or course of conduct may give rise to a contract implied in fact . . . ."); *Orion Technical Res., LLC v. Los Alamos Nat'l Sec., LLC*, 287 P.3d 967, 971 (N.M. Ct. App. 2012) ("Implied-in-fact contracts are 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996))).

**New York**: *Coca-Cola Refreshments, USA, Inc. v. Binghamton Giant Mkts., Inc.*, 2015 N.Y. App. Div. LEXIS 2861, at *3 (N.Y. 3d Dep't, April 2, 2015) (even without an express contract, an implied contract arises when the course of conduct of parties indicates that they have reached a meeting of the minds sufficient to constitute an enforceable contract); *Jemzura v. Jemzura*, 330 N.E.2d 414, 36 N.Y.2d 496, 503-04 (N.Y. 1975) (a contract may be inferred from the facts and circumstances of a case; the contract is derived from the presumed intention of the parties as indicated by their conduct and is just binding as an express contract; the law does not distinguish between agreements made by words and those made by conduct); *Brown Bros. Elec. Contractors v. Beam Constr. Corp.*, 361 N.E.2d 999, 41 N.Y.2d 397, 399 (N.Y. 1977) (The existence of a contract does not depend on the subjective intent of either party, but on "objective manifestations" of intent in the parties' words and deeds).

**North Carolina**: *Creech v. Melnik*, 495 S.E.2d 907, 911 (N.C. 1998) ("[A] contract implied in fact arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts. Such an implied contract is as valid and enforceable as an express contract. Except for the method of proving the fact of mutual assent, there is no difference in the legal effect of express contracts and contracts implied in fact."); *Snyder v. Freeman*, 266 S.E.2d 593, 601-03 (N.C. 1980) (same).

**North Dakota**: N.D. Cent. Code Ann. § 9-06-01 ("A contract is either express or implied. An express contract is one the terms of which are stated in words. An implied contract is one the existence and terms of which are manifested by conduct."); *Lord & Stevens, Inc. v. 3D Printing, Inc.*, 756 N.W.2d 789, 793 (N.D. 2008) ("An implied in fact contract 'is one the existence and terms of which are manifested by conduct.' 'When dealing with contracts implied in fact the court is required to determine from the surrounding circumstances what the parties actually intended.'" (quoting N.D. Cent. Code Ann. § 9-06-01; *Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324, 327 (N.D. 1982))).

**Ohio**: *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989) ("'In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding.'" (quoting *Hummel v. Hummel*, 14 N.E. 2d 923, 925 (Ohio. 1938))); *Stepp v. Freeman*, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997) ("[I]n implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding.").

**Oklahoma**: Okla. Stat. Ann. tit. 15, § 133 ("An implied contract is one, the existence and terms of which are manifested by conduct."); *Jones v. Univ. of Cent. Okla.*, 910 P.2d 987, 989 (Okla. 1995) ("Implied contracts exist where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract."); *see also First Nat'l Bank of Okmulgee v. Matlock*, 226 P. 328, 330 (Okla. 1924) (explaining formation of implied contracts).

**Oregon**: *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011) (finding a valid implied contract existed in medical billing dispute because the defendant accepted plaintiff's payment terms by providing services after being notified of the billing rates); *Staley v. Taylor*, 994 P.2d 1220, 1224 (Or. Ct. App. 2000) ("An implied-in-fact contract is no different in legal effect from an express contract. . . . In an implied-in-fact contract, the parties' agreement is inferred, in whole or in part, from their conduct.").

**Pennsylvania**: *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 521 (E.D. Pa.) *aff'd,* 401 F. App'x 697 (3d Cir. 2010) ("'A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. Implied contracts . . . arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.'" (quoting *Henderson v. NutriSystem*, 634 F. Supp. 2d 521, 535 (E.D. Pa. 2009))); *Elias v. Elias*, 237 A.2d 215, 217 (Pa. 1968) ("A contract implied in fact is an

6

actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances.").

**South Carolina**: *McKown v. Symetra Life Ins. Co.*, No. 4:13-CV-982-RBH, 2014 WL 6604059, at *3 (D.S.C. Nov. 20, 2014) (company entered implied contract by accepting payment); *Stanley Smith & Sons v. Limestone Coll.*, 322 S.E.2d 474, 477 (S.C. Ct. App. 1984) ("An implied contract, like an express contract, rests on an actual agreement of the parties to be bound to a particular undertaking. The parties must manifest their mutual assent to all essential terms of the contract in order for an enforceable obligation to exist.").

**South Dakota**: S.D. Codified Laws § 53-1-3 (contracts may be express as "stated in words" or implied as "manifested by conduct"); *Setliff v. Akins*, 2000 S.D. 124, ¶¶ 12, 24, 616 N.W.2d 875, 885, 888) (contract may be created by parties' course of conduct); *Weller v. Spring Creek Resort, Inc.*, 477 N.W.2d 839, 841 (S.D. 1991) (holding that "'[a] contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by the conduct of the parties . . .'" (quoting *Mahan v. Mahan*, 121 N.W.2d 367, 369 (S.D. 1963))).

**Tennessee**: *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 632 (Tenn. 2008) ("A contract implied in fact is one that arises from 'a legal inference from the facts and circumstances of the case.' The doctrine is designed to effectuate the actual intent of the parties at the time a contract was entered. These contracts must be based on evidence sufficient to show offer, acceptance, and intent to affect legal relations." (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1996))).

**Texas**: *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) ("It is said that the distinction between an express contract and one implied in fact is that the former arises when the contractual terms are stated by the parties; and that the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract. . . . Our courts have recognized that the real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them. . . . The conception is that of a meeting of the minds of the parties as implied from and evidenced by their conduct and course of dealing."); *Hous. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 698 (Tex. App. 2013) ("'[T]he distinction between an express and an implied[-in-fact] contract is of little importance, if it can be said to exist at all.' The only difference is that an express contract 'arises when the contractual terms are stated by the parties,' and an implied-in-fact contract 'arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract.'" (quoting *Haws & Garrett Gen. Contractors*, 480 S.W.2d at 609)).

**Utah**: *Fowler v. Taylor*, 554 P.2d 205, 208 (Utah 1976) ("An implied in fact contract differs from an express contract only in mode of expression. 'A contract is express or implied by reason of the expression of offer and acceptance, whether there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain. The elements are basically identical in both cases, although the evidentiary facts may be expressed

7

differently.'" (quoting *Rasmussen v. U.S. Steel Co.*, 265 P.2d 1002, 1004 (Utah 1954))); *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987) ("A contract implied in fact is a 'contract' established by conduct.").

**Virginia**: *McKay Consulting, Inc. v. Rockingham Mem'l Hosp.*, 665 F. Supp. 2d 626, 632 (W.D. Va. 2009) ("Virginia law recognizes that parties may enter into an implied-in-fact contract, which is formed not by express agreement, but rather by agreement inferred from the conduct of the parties."); *Hendrickson v. Meredith*, 170 S.E. 602, 605 (Va. 1933) ("[This case] belongs to that class of cases usually referred to by text writers as 'contracts implied in fact,' and the only difference between an express contract and a contract implied in fact is that in the former all of the terms and conditions are expressed between the parties, while in the latter some of the terms and conditions are implied in law from the conduct of the parties.").

**Washington**: *Young v. Young*, 191 P.3d 1258, 1262-63 (Wash. 2008) ("A contract implied in fact: 'is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them.'" (quoting *Johnson v. Nasi*, 309 P.2d 380, 382-83 (Wash. 1957))). *See also Irvin Water Dist. No. 6 v. Jackson P'ship*, 34 P.3d 840 (Wash. Ct. App. 2001) (enforcing implied contract for water service).

**Wisconsin**: *Theuerkauf v. Sutton*, 306 N.W.2d 651, 658 (Wis. 1981) ("[A] contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.") (internal quotation marks and citation omitted); Wis. Jury Instruction 3024 (1993) ("An agreement may be established by the conduct of the parties without any words being expressed in writing or orally, if from such conduct it can fairly be inferred that the parties mutually intended to agree on all the terms. This type of agreement is known as an implied contract. An implied contract may rest partially on words expressed in connection with conduct or solely upon conduct.").

**Wyoming**: *Symons v. Heaton*, 2014 WY 4, ¶ 9, 316 P.3d 1171, 1174 (Wyo. 2014) ("In Wyoming negotiating parties may reach an "implied-in-fact" contract. For an implied-in-fact contract to have been created by the parties' conduct, 'the conduct from which that inference is drawn must be sufficient to support the conclusion that the parties expressed a mutual manifestation of an intent to enter into an agreement.'" (quoting *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 15, 75 P.3d 640, 649 (Wyo. 2003))).

8

### STATE AUTHORITIES ON VOLUNTARY PAYMENT DOCTRINE

**Alabama**:  *U–Haul Co. of Ala., Inc. v. Johnson*, 893 So. 2d 307, 311-12 (Ala. 2004) ("The U–Haul defendants' primary defense to Johnson's claim and to his asserted right to sue on behalf of a class is based upon the voluntary-payment doctrine.  This Court has long recognized the defense of voluntary payment:  'It has been the law in Alabama for over 150 years that where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion.'  A breach-of-contract claim is precluded by proof that the party asserting the claim voluntarily paid what he or she is seeking to recover.  Nevertheless, '[i]t is well settled that money voluntarily paid under a mistake of fact may be recovered, even where the party paying had means of ascertaining the real facts.  However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered.'" (quoting *Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So. 2d 534, 537 (Ala. 1995) and *Sherrill v. Frank Morris Pontiac–Buick–GMC, Inc.*, 366 So. 2d 251, 257 (Ala. 1978))).

**Arizona**:  *Brown & Bain, P.A. v. O'Quinn*, No. 03-0923 PHX ROS, 2006 WL 449279, at *6 (D. Ariz. Feb. 22, 2006) (recognizing and applying Arizona voluntary payment doctrine); *Moody v. Lloyd's of London*, 152 P.2d 951, 953 (Ariz. 1944) ("Payment made voluntary and with the full knowledge of facts precludes payor from any recovery for such voluntary payment, and a judgment declaring such payment 'wrongful' and granting recovery is error.").

**Arkansas**:  *TB of Blythesville, Inc. v. Little Rock Sign & Emblem, Inc.*, 946 S.W.2d 930, 932 (Ark. 1997) ("When one pays money on demand that is not legally enforceable, the payment is deemed voluntary.  Absent fraud, duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered."

**California**:  *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908-09 (N.D. Cal. 2011) ("The voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts.").  California law treats the voluntary payment doctrine as an affirmative defense.  *See, e.g.*, *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012).  In this decision, the court stated that, "[t]he voluntary payment doctrine is an affirmative defense that bars the recovery of money that was voluntarily paid with knowledge of the facts."  Motions to dismiss based on such an affirmative defense can be granted if the complaint's allegations, with all inferences drawn in the plaintiff's favor, nonetheless show that the affirmative defense is obvious on the face of the complaint.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

**Colorado**:  *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 127 (Colo. App. 2007) ("The voluntary payment rule has been adopted in Colorado.  The rule 'provides that where one makes a voluntary payment with knowledge of all relevant facts, and then sues to recover that payment, there generally can be no recovery, even if there was no legal liability to pay in the first place.'  However, the payor can defeat application of the rule by showing payment under protest or duress or a mistake as to all relevant facts." (quoting *Auto-Chlor Sys., Inc. v. JohnsonDiversey*, 328 F. Supp. 2d. 980, 1011 (D. Minn. 2004))).

9

**District of Columbia**: *Eagle Maint. Servs. v. Dist. of Columbia Contract Appeals Bd.*, 893 A.2d, 569, 582 (D.C. 2006) (recognizing the voluntary payment doctrine as a common law defense to a suit for breach of contract). The voluntary payment doctrine "is an affirmative defense to a suit for breach of contract which provides that 'money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal.'" *Id.*, *citing Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1329 (Ill. App. Ct. 1995).

**Delaware**: *Home Ins. Co. v. Honaker*, 480 A.2d 652, 653 (Del. 1983) ("As a general rule, money paid due to a mistake of law is not recoverable, while money paid under a mistake of fact may be recovered in equity under an unjust enrichment theory."); *Nieves v. All Star Title, Inc.*, No. N10C-03-191 PLA, 2010 WL 2977966, at *6 (Del. Super. Ct. July 27, 2010) ("[T]o the extent Nieves' suit seeks to recover the fees paid to All Star for its services, he is barred from doing so by the voluntary payment rule, which provides that 'where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.'" (quoting W.D. M, Annotation, *Right to Recover Money Voluntarily Paid with Knowledge of Facts but Under Misapprehension as to Legal Rights or Obligations*, 53 A.L.R. 949 (1928))).

**Florida**: *Sanchez v. Time Warner, Inc.*, No. 98-211-CIV-T-26A, 1998 WL 834345, at *3 (M.D. Fla. Nov. 4, 1998) (applying Florida's voluntary payment doctrine); *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959) ("[W]here one makes a payment of any sum under a claim of right with knowledge of the facts such a payment is voluntary and cannot be recovered.").

**Georgia**: Ga. Code Ann. § 13-1-13 ("Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered . . . ."); *Telescripps Cable Co. v. Welsh*, 542 S.E.2d 640, 641-43 (Ga. Ct. App. 2000) (dismissing class action that challenged voluntarily paid late fees).

**Idaho**: *Bremer, LLC v. E. Greenacres Irrigation Dist.*, 316 P.3d 652, 660 (Idaho 2013) ("The voluntary payment rule provides that 'a person cannot, either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with full knowledge of all the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed.' Under this rule, a person cannot recover a payment that he voluntarily made to satisfy a demand in excess of what is legally due, if he made that payment with full knowledge of the facts and free from mistake, fraud, duress, or extortion." (quoting *Breckenridge v. Johnston*, 108 P.2d 833, 838 (Idaho 1940))).

**Illinois**: *Harris v. ChartOne*, 841 N.E.2d 1028, 1031 (Ill. App. Ct. 2005) ("It has been a universally recognized rule that absent fraud, duress, or mistake of fact, money voluntarily paid on a claim of right to the payment cannot be recovered on the ground that the claim was illegal. The voluntary-payment doctrine applies to any cause of action which seeks to recover a payment on a claim of right, whether that claim is premised on a contractual relationship or a statutory obligation, as in the case at bar.").

**Indiana**: *Time Warner Entm't Co., L.P. v. Whiteman*, 802 N.E.2d 886, 889 (Ind. 2004) ("'As a general rule, money voluntarily paid with a full knowledge of all the facts, and without any fraud or imposition on the payor, cannot be recovered back, although it was not legally due.'" (quoting 23 I.L.E., *Payment* §§ 41, 42-43 (1970) (codified as 23 I.L.E., *Payment* §§ 20-21, 23))).

**Iowa**: *Nat'l Fire Ins. Co. of Hartford v. Butler*, 152 N.W.2d 271, 273 (Iowa 1967) ("The rule of law is well settled that, where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying." (quoting W.D. M, Annotation, *Right to Recover Money Voluntarily Paid with Knowledge of Facts but Under Misapprehension as to Legal Rights or Obligations*, 53 A.L.R. 949 (1928))); *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 426 (Iowa 1988); *Morgan v. Jasper Cnty.*, 274 N.W. 310, 311 (Iowa 1937) (noting that "it is held by the great preponderance of adjudged cases that, where one under a mistake of law, or in ignorance of law, but with full knowledge of all the facts, and in the absence of fraud or improper conduct upon the part of the payee, voluntarily and without compulsion pays money on a demand not legally enforceable against him, he cannot recover it back"); *Gronstal v. Van Druff*, 261 N.W. 638, 640 (Iowa 1935) ("It has been the settled law of this state for over seventy years that where money is paid voluntarily, without any compulsion and without any promise to repay, it cannot be recovered by the payor.").

**Kansas**: *Midland Pizza, LLC v. Sw. Bell Tel. Co.*, No. 10-2219-CM-GLR, 2010 WL 4622191, at *4 (D. Kan. Nov. 5, 2010) ("Kansas' voluntary payment doctrine applies when payment is voluntarily made with full knowledge of all the facts and is not induced by any fraud or improper conduct."), *citing MacGregor v. Millar*, 203 P.2d 137, 139 (Kan. 1949); *Bradshaw v. Glasscock*, 136 P. 933, 933 (Kan. 1913) (where a party makes a payment "with their eyes open," they are estopped from maintaining an action to recover that payment).

**Kentucky**: *Lee v. Hanna*, 70 S.W.2d 673, 674 (Ky. 1934) ("A voluntary payment or expenditure made with full knowledge of all the facts will not be refunded without a showing that such was made under immediate and urgent necessity therefor."); *Am. Nat'l Assurance Co. v. Ricketts*, 19 S.W.2d 1071, 1072 (Ky. 1929) (describing the "well-settled rule" that "a party cannot, by direct action or by way of set-off or counterclaim, recover money voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed. . . . So voluntary payments by a corporation cannot be recovered back.") (internal quotation marks and citation omitted).

**Louisiana**: *Bickham v. Wash. Bank & Trust Co.*, 515 So. 2d 457, 459 (La. Ct. App. 1987) ("Bickham should have sought judicial relief before paying the excess interest. The Court was available, and a petition by Bickham seeking a declaratory judgment would have resulted in a prompt judicial disposition of the issues. He did not do so, and is now precluded from recovering the overcharge.").

**Maryland**: *Halle Dev., Inc. v. Anne Arundel Cnty.*, 808 A.2d 1280, 1286 n.16 (Md. 2002) ("The common law voluntary payment rule has been present in case law from our State courts since the 1840s") (citing *Balt. & S.R. Co. v. Faunce*, 6 Gill 68 (Md. 1847) ("A party cannot recover money voluntarily paid with a full knowledge of all the facts, although no

11

obligation to make such payment existed."); *id.* at 1286-87, (holding that claim was barred by voluntary payment doctrine and stating the "general common law rule that, when one voluntarily pays money under a mistake of law, the payor may not ordinarily bring a common law action for the recovery of the money. He may sue for a return on the money only if the right to recover it is provided for by statute").

**Massachusetts**: *Selectmen of Hull v. Cnty. Comm'rs of Plymouth Cnty.*, 422 N.E.2d 787, 788 (Mass. App. Ct. 1981) (stating that "in the absence of fraud or mistake of fact, one may not recover money paid under a claim of right unless the payment has been exacted under conditions amounting to duress."); *Carey v. Fitzpatrick*, 17 N.E.2d 882, 883 (Mass. 1938) ("It is an established rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim."); *Hinckley v. Town of Barnstable*, 42 N.E.2d 581, 584 (Mass. 1942) ("'It is an established rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim.'") (quoting *Carey*, 17 N.E.2d at 883).

**Michigan**: *Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607, 612 (Mich. 1951) ("'The rule is well settled that, where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.'" (quoting W.D. M, Annotation, *Right to Recover Money Voluntarily Paid with Knowledge of Facts but Under Misapprehension as to Legal Rights or Obligations*, 53 A.L.R. 949 (1928))).

**Minnesota**: *Best Buy Stores, L.P. v. Benderson-Wainberg Assocs., L.P.*, 668 F.3d 1019, 1030 (8th Cir. 2012), *citing Hanson v. TeleCommc'ns, Inc.*, No. C7-00-534, 2000 WL 1376533, at *3 (Minn. Ct. App. Sept. 26, 2000); *Minn. Pipe & Equip. Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 874 (D. Minn. Apr. 3, 2013) ("One who has knowledge of the material facts and makes a payment voluntarily cannot later recover it on the ground that he or she was under no legal obligation to make the payment in the first place."); *Joannin v. Ogilvie*, 52 N.W.2d 217, 217 (Minn. 1892) ("The rule is that money paid voluntarily, with full knowledge of the facts, cannot be recovered back. If a man chooses to give away his money, or to take his chances whether he is giving it away or not, he cannot afterwards change his mind; but it is open to him to show that he supposed the facts to be otherwise, or that he really had no choice.").

**Mississippi**: *Mobile Telecomm. Techs. Corp. v. Aetna Cas. & Sur. Co.*, 962 F. Supp. 952, 956 (S.D. Miss. 1997) (dismissing insurance company's counterclaim to recover insurance payment because "no one forced [defendant] to pay the money in question" and it "did not pay the money based on a mistake of fact;" defendant "elected to pay the money rather than pursue that available avenue of relief"); *McDaniel Bros. Const. Co. v. Burk-Hallman Co.*, 175 So. 2d 603, 605 (Miss. 1965) ("[A] voluntary payment cannot be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand.").

**Missouri**: *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726 (Mo. 2009) (*en banc*) ("'[A] person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back . . . .'" (quoting *Am. Motorists Ins. Co. v. Shrock*, S.W.2d 809, 812 (Mo. App. 1969))).

**Montana**: *Sturdevant v. Mills*, 580 P.2d 923, 926 (Mont. 1978) (applying voluntary payment doctrine to prevent recovery by one insurance agent for payment of a joint obligation from another agent).

**Nebraska**: *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 743 (Neb. 2011) ("Normally, a plaintiff cannot recover money voluntarily paid under a claim of right to payment if the plaintiff knew of facts that would permit the plaintiff to dispute the claim and withhold payment."); *Woodman of the World Life Ins. Co. v. Am. Soc'y of Composers, Authors & Publishers*, 19 N.W.2d 540 (Neb. 1945) (quoting *Meyer v. Rosenblatt & Son*, 229 N.W. 771, 772 (Neb. 1930) ("'Where one has voluntarily, with full knowledge of the facts, paid a disputed demand, which he claimed he did not owe, he cannot ordinarily recover it back on the ground of its invalidity.'")).

**Nevada**: *Nev. Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 338 P.3d 1250, 1253-54 (Nev. 2014) ("The voluntary payment doctrine is an affirmative defense that 'provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment. . . .' The voluntary payment doctrine remains good law in Nevada. Therefore, we hold that the voluntary payment doctrine is a valid affirmative defense in Nevada." (quoting *Best Buy Stores v. Benderson-Wainberg Assocs.*, 668 F.3d 1019, 1030 (8th Cir. 2012))).

**New Jersey**: *Simonson v. Hertz Corp.*, No. 1:10-CV-1585, 2011 WL 1205584, at *3 (D.N.J. Mar. 28, 2011); *In re N.J. State Bd. of Dentistry*, 423 A.2d 640, 643 (N.J. 1980) ("[W]here a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back." (quoting *City of Camden v. Green*, 25 A. 357, 358 (N.J. 1892))).

**New Mexico**: *Rabbit Ear Cattle Co. v. Frieze*, 453 P.2d 373, 374 (N.M. 1969) ("It is also a well[-]established rule that payments voluntarily made with full knowledge of all material facts cannot be recovered back in absence of fraud or duress."); *Tierra Realty Trust LLC v. Vill. of Ruidoso*, 2013-NMCA-030, 296 P.3d 500, 509 (N.M. Ct. App. 2013) ("'It is well established that in the absence of a statute permitting a recovery, [fees] paid voluntarily and without compulsion cannot be recovered.'" (quoting *Occidental Life of Cal. v. State*, 589 P.2d 673, 673 (N.M. 1979))).

**New York**: *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (applying New York law) (citing *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 27 (N.Y. App. Div. 2002), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003) (Under New York common law, the voluntary payment doctrine bars a breach-of-contract claim if a party continues to pay amounts charges under a contract without objection; a plaintiff is precluded from recovering if it has made payments with full knowledge of the facts and if it failed to use diligence to determine its actual rights and obligations); *Pike v. N.Y. Life Ins. Co.*, 72 A.D.3d 1043, 1050-51 (N.Y. App. Div.

2010) (voluntary payment doctrine bars recovery of payments made in the absence of fraud); *Rocky Knoll Estates MHC, LLC v. CW Capital Asset Mgmt., LLC*, 2015 U.S. Dist. LEXIS 48311, at *5 (W.D.N.Y. 2015) (voluntary payment doctrine is an affirmative defense that warrants dismissal in cases where the defense is apparent on the face of a complaint); *Citicorp N. Am., Inc. v Fifth Ave. 58/59 Acquisition Co.*, 70 A.D.3d 408, 408-09 (N.Y. App. Div. 2010) (dismissing complaint where invoiced amounts were paid for nine years without protest or inquiry, evidencing lack of diligence, and where the plaintiffs were not laboring under any material mistake of fact).

**North Carolina**: *Boydell v. Wells Fargo Bank, N.A.*, No. 2:12-CV-000035-MR, 2013 WL 5462255, at *1 (W.D.N.C. Sept. 30, 2013) ("Under the North Carolina doctrine of voluntary payment, a payment cannot be recovered if it is voluntarily made by a person with full knowledge of all facts relevant to the payment."); *Collins v. Covert*, 98 S.E.2d 26, 29 (N.C. 1957) ("These plaintiffs, with full knowledge of all the facts, continued to pay the defendant the sum of $200 per month for eleven months after her remarriage. A payment voluntarily made, with a knowledge of all the facts, cannot be recovered although there was no debt.").

**North Dakota**: *In re Peschel*, 4 N.W.2d 194, 198 (N.D. 1942) ("If the payments were wholly voluntary there can be no recovery even though they may have been paid under mistake of law.").

**Ohio**: *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 956 (N.D. Ohio 2009) ("Under the voluntary payment doctrine or defense ('VPD'), which is recognized in Ohio, '[i]n the absence of fraud, duress, compulsion or mistake of fact, money voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay.'" (quoting *State ex rel. Dickman v. Defenbacher*, 86 N.E.2d 5 (Ohio 1949))); *Case W. Reserve Univ. v. Friedman*, 515 N.E.2d 1004, 1005 (Ohio Ct. App. 1986) ("The long-standing general rule in Ohio on voluntary payments is that a volunteer who makes payment, albeit mistakenly, on a legal obligation of another may not thereafter seek reimbursement from the benefiting party for his error.").

**Oklahoma**: *Stephenson Oil Co. v. Citgo Petroleum Corp.*, No. 08-CV-380-TCK-TLW, 2010 WL 2998604, at *13 (N.D. Okla. July 28, 2010) ("Pursuant to the voluntary payment doctrine, '[m]oney voluntarily paid under a claim of right to payment, with full knowledge of all of the facts which would entitle the payor to relief against the payment of the claim, cannot be recovered on the ground that the claim was illegal.' This doctrine is an affirmative defense." (quoting *Hadley v. Farmers Nat'l Bank of Okla. City*, 257 P. 1101, 1103-04 (Okla. 1927))).

**Oregon**: *Adams v. Crater Well Drilling, Inc.*, 556 P.2d 679, 681 (Or. 1976) ("As a general rule money which is voluntarily paid with full knowledge of facts which would excuse payment cannot be recovered.").

**Pennsylvania**: *Parsons v. City of Phila.*, No. 13-0955, 2014 WL 6973024, at *2 (E.D. Pa. Dec. 9, 2014) (analyzing the history and procedural aspects of the voluntary payment doctrine under Pennsylvania law); *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 661 (Pa. 2009) ("Under the voluntary payment defense, 'one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having

14

been practiced upon him . . . cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law.'" (quoting *In re Kennedy's Estate*, 183 A. 798, 802 (Pa. 1936))).

**South Carolina**: *Baker v. Allen*, 66 S.E.2d 618, 621-22 (S.C. 1951) ("'[I]f there is no coercion or mistake of fact, the case falls within the general rule of voluntary payments, and this is generally held to be true by the weight of authority although the payment is made under a mistake of law. Under this rule the illegality of the demand paid constitutes of itself no ground for relief, but there must be, in addition, some compulsion or coercion attending its assertion which controls the conduct of the party making the payment.'" (quoting 33 Am. Jur. 1st *Licenses* § 88 (1941))).

**South Dakota**: *Siefkes v. Clark Title Co.*, 215 N.W.2d 648, 651 (S.D. 1974) (acknowledging that the doctrine is "universally recognized" and stating that "the rule is well settled that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered on the ground that the claim was illegal or that there was no liability to pay in the first instance").

**Tennessee**: *Jackson v. Novastar Mortg., Inc.*, 645 F. Supp. 2d 636, 647 (W.D. Tenn. 2007) ("The voluntary payment doctrine bars recovery where a party makes a voluntary payment with knowledge of all relevant facts and then sues to recover that payment regardless of any initial legal liability."); *Bridgecourt Apartments P'ship v. Ellerbe*, No. E2003-01298-COA-R3-CV, 2004 WL 221310, at *2 (Tenn. Ct. App. Feb. 2, 2004) ("[T]he voluntary payment rule . . . holds that a voluntary payment, even though the person making the payment protests the amount the money so paid may not be recovered on the ground the claim was illegal. In this case, the partners were experienced in business, knew the facts and circumstances and their rights, yet elected to pay the claimed amount. We conclude the voluntary payment rule is applicable.").

**Texas**: *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 779 (Tex. 2005) (analyzing the voluntary payment doctrine under Texas law in depth).

**Utah**: *RMA Ventures v. SunAmerica Life Ins.*, No. 2:03-CV-740, 2007 WL 4206952, at *4 (D. Utah Nov. 26, 2007) ("The Voluntary Payment Doctrine bars recovery of money voluntarily paid with a full knowledge of all the facts, in the absence of fraud, duress or compulsion. Payments are considered voluntary even if made to avoid foreclosure so long as the threat of foreclosure is not made under a false claim.").

**Virginia**: *D.R. Horton, Inc. v. Bd. of Supervisors for Cnty. of Warren*, 737 S.E.2d 886, 888 (Va. 2013) ("The voluntary payment doctrine, as established under Virginia common law, provides as follows: 'Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, [i] without an immediate and urgent necessity therefor, or [ii] unless to release his person or property from detention, or [iii] to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party at the time of making the payment, files a written protest, does not make the payment involuntary.'" (quoting *Barrow v. Cnty. of Prince Edward*, 92 S.E. 910, 910 (Va. 1917))).

**Washington**: *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 23 (Wash. 2007) ("'[M]oney voluntarily paid under a claim of right to the payment, and with full knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance.'" (quoting *Speckert v. Bunker Hill Ariz. Mining Co.*, 106 P.2d 602 (Wash. 1940))). *See also Hawkinson v. Conniff*, 334 P.2d 540, 543 (Wash. 1959) (applying voluntary payment doctrine); *Speckert v. Bunker Hill Ariz. Mining Co.*, 106 P.2d 602, 608-09 (Wash. 1940) (same).

**Wisconsin**: *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶ 13, 255 Wis. 2d 447, 649 N.W.2d 626 ("'[M]oney paid voluntarily, with knowledge of the facts, and without fraud or duress, cannot be recovered merely on account of ignorance or mistake of law.'" (quoting *Frederick v. Douglas Cnty.*, 71 N.W. 798, 801 (Wis. 1897))).

**Wyoming**: *Fulton v. Des Jardins*, 227 P.2d 240, 245 (Wyo. 1951) (applying the voluntary payment doctrine).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on counsel of record via *ECF* on May 1, 2015.

>  */s/ Douglas P. Lobel*
>  Douglas P. Lobel

115366436