IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: INTRAMTA SWITCHED ACCESS CHARGES LITIGATION § § § § § THIS DOCUMENT RELATES TO § CIVIL ACTION NOS. § § 3:16-CV-0974-D, 3:16-CV-0975-D, § 3:16-CV-0977-D, 3:16-CV-0979-D, § 3:16-CV-0988-D, 3:16-CV-0989-D, § 3:16-CV-0990-D, 3:16-CV-1010-D, § 3:16-CV-1105-D, 3:16-CV-1119-D, § 3:16-CV-1122-D, 3:16-CV-1123-D, § 3:16-CV-1126-D, 3:16-CV-1443-D, § 3:16-CV-1605-D, 3:16-CV-1626-D, § 3:16-CV-1893-D, 3:16-CV-1980-D, § 3:16-CV-1985-D, 3:16-CV-2210-D, § 3:16-CV-2722-D, and 4:16-CV-0302-D. § | Civil Action No. 3:14-MD-2587-D (MDL No. 2587) |

MEMORANDUM OPINION
AND ORDER

In a prior opinion in these MDL proceedings—*In re IntraMTA Switched Access Charges Litigation*, 2015 WL 7252948 (N.D. Tex. Nov. 17, 2015) (Fitzwater, J.) ("*IntraMTA I*")—the court addressed the question whether local exchange carriers ("LECs") can charge interexchange carriers ("IXCs") access fees for access services that the LECs provide the IXCs to enable them to exchange interstate wireless intraMTA calls—that is, interstate wireless calls that originate and terminate within the same Major Trading Area ("MTA"). In *IntraMTA I* the IXCs were the plaintiffs and the LECs were the defendants. The Fed. R. Civ. P. 12(b)(6) motions to dismiss in the instant tag-along actions present the same principal

question as in *IntraMTA I*, although the LECs are aligned as plaintiffs and the IXCs are aligned as defendants, and the IXCs rely on arguments not raised in *IntraMTA I*. Because the court concludes that the LECs have pleaded plausible claims on which relief can be granted, it denies the motions to dismiss.

I

The court assumes that the parties are familiar with its opinion in *IntraMTA I* and will add to its recitation of the background facts and procedural history what is necessary to understand the present decision. Plaintiffs in these cases[1] are LECs that are suing defendants Level 3 Communications, LLC and its affiliates (collectively, "Level 3")[2] in their capacities as IXCs.[3] The LECs allege that Level 3 ordered and used their interstate and intrastate tariffed access services to exchange calls between Level 3's long distance network and the LECs's local networks; that the LECs have timely rendered bills setting forth the charges

---

[1]The Level 3 cases consist of the following 22 lawsuits (shown by the docket numbers in this court): 3:16-CV-0974-D, 3:16-CV-0975-D, 3:16-CV-0977-D, 3:16-CV-0979-D, 3:16-CV-0988-D, 3:16-CV-0989-D, 3:16-CV-0990-D, 3:16-CV-1010-D, 3:16-CV-1105-D, 3:16-CV-1119-D, 3:16-CV-1122-D, 3:16-CV-1123-D, 3:16-CV-1126-D, 3:16-CV-1443-D, 3:16-CV-1605-D, 3:16-CV-1626-D, 3:16-CV-1893-D, 3:16-CV-1980-D, 3:16-CV-1985-D, 3:16-CV-2210-D, 3:16-CV-2722-D, and 4:16-CV-0302-D.

[2]In most of the Level 3 cases, plaintiffs have sued Level 3 Communications, LLC and its affiliates, WilTel Communications, LLC and Global Crossing Telecommunications, Inc. In four cases (3:16-CV-975-D, 3:16-CV-1105-D, 3:16-CV-1119-D, and 3:16-CV-1123-D), plaintiffs have also sued Level 3 Communications, LLC's affiliate, Broadwing Communications, LLC. In one case (3:16-CV-2722-D), plaintiffs have only sued WilTel Communications, LLC and Global Crossing Telecommunications, Inc.

[3]Level 3 moves to dismiss on the ground that the LECs have not pleaded that it is an IXC.

required by the LECs's state and federal tariffs for the access services; and that, since early 2014, Level 3 has withheld payment of interstate and intrastate access charges for wireless (also known as "Commercial Mobile Radio Service" or "CMRS") intraMTA calls, which Level 3 contends by law are not subject to access charges. The LECs assert claims for breach of federal and state tariffs, and they seek a declaratory judgment that Level 3 is obligated to pay access charges for exchanging intraMTA calls between Level 3's long-distance network and the LECs's local telephone networks.[4]

In *IntraMTA I* the court held, in pertinent part:

> Under 47 U.S.C. § 251(g), the proper methodology for determining whether LECs can charge IXCs for the access services at issue [(i.e., access services for interstate wireless intraMTA calls)] is to identify the baseline practice on the date immediately preceding February 8, 1996 and then determine whether the [Federal Communications Commission ("FCC")] by regulation has *explicitly superseded* that practice. Defendants have established that the FCC has not yet explicitly superseded the baseline compensation practices that applied on the date immediately preceding February 8, 1996 to the access services that LECs provide IXCs to enable them to exchange interstate wireless intraMTA calls. And plaintiffs have failed to show otherwise.

*IntraMTA I*, 2015 WL 7252948, at *11.

Level 3 now moves under Rule 12(b)(6) to dismiss the LECs's actions for failure to state a claim on which relief can be granted. In support of its motions, it relies on the

---

[4]Level 3 relies on the complaint filed in *Centurylink Communications, LLC v. Level 3 Communications, LLC*, No. 3:16-CV-0988-D, as representative of the complaints filed in all of the Level 3 cases. The court will do so as well.

following grounds: first, it adopts the arguments that Sprint Communications Company L.P. ("Sprint") and MCI Communications Services, Inc. / Verizon Select Services Inc. ("Verizon")—the IXCs in *IntraMTA I*—presented in *IntraMTA I* to argue that IXCs are not obligated to pay access fees to LECs for access services that the LECs provide the IXCs to enable them to exchange interstate wireless intraMTA calls; second, Level 3 contends that the LECs have failed to plead that Level 3 is an IXC; third, Level 3 maintains that, under 47 U.S.C. § 251(g)—a provision of the Telecommunications Act of 1996 (the "Telecommunications Act" or the "Act")—access charges apply only to long distance communications, and therefore do not apply to intraMTA wireless calls, which are defined by an order of the FCC as local calls; and, fourth, Level 3 posits that, under the regulatory scheme established by Congress and the FCC, the same call cannot simultaneously be subject to access charges and reciprocal compensation. The LECs oppose Level 3's motions. The court has heard oral argument.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Level 3's motions, the LECs's complaints must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III

Level 3 relies first on the arguments that Sprint and Verizon made in their opposition to the LECs's motions to dismiss addressed in *IntraMTA I*. The court denies this ground of Level 3's motion for the reasons explained in *IntraMTA I*.

### IV

At the conclusion of Level 3's adoption of Sprint's and Verizon's arguments, it advances an argument that the court will treat as the second ground of its motions to dismiss: that even if there is an "IXC exception" to the reciprocal compensation requirement of 47

U.S.C. § 251(b)(5),[5] the LECs have not established the contours of the exception, have not pleaded facts showing what category Level 3 falls into, or even what distinguishes IXCs from other intermediate carriers, and have not alleged that Level 3 delivers intraMTA traffic in its capacity as an IXC as opposed to some other type of intermediate carrier. The court concludes that Level 3 is not entitled to dismissal on this basis.

The LECs have plausibly pleaded that Level 3 is an IXC. *See, e.g.,* Compl. ¶ 98 ("Level 3 is an IXC. Level 3 ordered and used the [LECs's] interstate and intrastate tariffed access services to exchange calls between Level 3's long-distance network and the [LECs's] local networks."). To the extent Level 3 contends, "as a legal matter," that it cannot be an IXC, it has failed to cite controlling authority for this position. Accordingly, the court denies Level 3's motion to dismiss on the basis that the LECs have failed to allege that Level 3 is an IXC.

V

Level 3's third ground for dismissal relies on a new argument that the IXCs did not raise in *IntraMTA I*: that the carve-out found in 47 U.S.C. § 251(g)—a provision of the Telecommunications Act—applies only to long distance communications, and therefore does not apply to intraMTA wireless calls, which are defined by FCC order as local calls.[6]

---

[5]Under 47 U.S.C. § 251(b)(5), LECs have "[t]he duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications."

[6]The failure of the IXCs to raise this argument in *IntraMTA I* prompts this question: If this theory so obviously represents a correct interpretation and application of 47 U.S.C. § 251(g) and the pertinent FCC order, why did the IXCs fail to argue it in *IntraMTA I*?

A

47 U.S.C. § 251(g) provides:

> On and after February 8, 1996, each [LEC], to the extent that it provides wireline services, shall provide exchange access, information access, and exchange services for such access to [IXCs] and information service providers in accordance with the same equal access and nondiscriminatory interconnection restrictions and obligations (including receipt of compensation) that apply to such carrier on the date immediately preceding February 8, 1996 under any court order, consent decree, or regulation, order, or policy of the [FCC], until such restrictions and obligations are explicitly superseded by regulations prescribed by the [FCC] after February 8, 1996. During the period beginning on February 8, 1996 and until such restrictions and obligations are so superseded, such restrictions and obligations shall be enforceable in the same manner as regulations of the [FCC].

In *IntraMTA I* the court held that § 251(g) left in place the access charge regime between LECs and IXCs that existed prior to passage of the Telecommunications Act. *IntraMTA I*, 2015 WL 7252948, at *5 ("The Telecommunications Act thus preserves the restrictions and obligations concerning LECs—'including receipt of compensation'—until later explicitly superseded by FCC regulations."). The question whether LECs were permitted under federal law to charge IXCs access charges for intraMTA wireless calls "thus turn[ed] on whether the FCC ha[d] by regulation *explicitly superseded* the pertinent compensation scheme that was the existing practice at the time the Telecommunications Act was enacted." *Id.* In *IntraMTA I* the court concluded that the FCC had *not* yet "explicitly superseded" the preexisting compensation scheme.

Level 3 maintains that the carve-out found in § 251(g) to the reciprocal compensation

regime otherwise imposed by § 251(b)(5) is limited to long distance communications, and that the FCC has defined intraMTA wireless calls as local calls. Level 3 posits that § 251(g) applies to the extent that a LEC provides "exchange access" to an IXC; that "exchange access" is defined in the Act as "the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services," 47 U.S.C. § 153(20); and that "telephone toll service" is defined as "telephone service between stations in different exchange areas," *id.* § 153(55). Level 3 maintains that "telephone toll service" is, in colloquial terms, long distance calling service. It contends that a wireless call that originates and terminates within the same MTA—i.e., an intraMTA wireless call—is a local call under the FCC's order in *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Interconnection Between Local Exchange Carriers and Commercial Mobile Radio Service Providers*, First Report and Order, 11 FCC Rcd. 15499 (Aug. 8, 1996) ("Local Competition Order"), so that all intraMTA wireless calls are subject to the payment of reciprocal compensation, not access charges. In sum, Level 3 contends that the court should dismiss the LECs's actions for failure to state a claim because

> [i]t would violate Section 251 to assess access charges on local wireless traffic because even where Section 251 allows access charges—in the Section 251(g) carve-out—it only allows them for "exchange access"—i.e., *long distance* traffic which by definition cannot include intraMTA calls. Thus, Section 251(b)(5) explicitly requires local wireless calls to be subject to reciprocal compensation because they are "telecommunications" but they are not "access services" (indeed, they are "*Non-Access*" services).

Ds. Br. 14.

B

For purposes of today's decision, the court will assume *arguendo* that Level 3's interpretation of the Act is correct, and that § 251(g) preserves the pre-February 8, 1996 access compensation scheme for LECs providing access services to IXCs only for long distance communications. Even on that assumption, Level 3's motions to dismiss fail at least for the reason that Level 3 has not established that all the intraMTA wireless calls at issue are by definition local calls.

To establish that all intraMTA wireless calls are by definition local calls, Level 3 relies on ¶ 1036 of the Local Competition Order, which provides:

> On the other hand, in light of this Commission's exclusive authority to define the authorized license areas of wireless carriers, *we will define the local service area for calls to or from a CMRS network for the purposes of applying reciprocal compensation obligations under section 251(b)(5)*. Different types of wireless carriers have different FCC-authorized licensed territories, the largest of which is the "Major Trading Area" (MTA).  Because wireless licensed territories are federally authorized, and vary in size, we conclude that the largest FCC-authorized wireless license territory (*i.e.*, MTA) serves as the most appropriate definition *for local service area for CMRS traffic for purposes of reciprocal compensation under section 251(b)(5)* as it avoids creating artificial distinctions between CMRS providers.  Accordingly, traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges.

Local Competition Order, 11 FCC Rcd. at 16014, ¶ 1036 (emphasis added) (footnotes omitted).  Level 3's reliance on ¶ 1036 is misplaced because this provision defines the local service area "for calls to or from a CMRS network."  Moreover, in ¶ 1034 of the Local

Competition Order, the FCC stated: "[w]e find that the reciprocal compensation provisions of section 251(b)(5) for transport and termination of traffic *do not apply* to the transport or termination of interstate or intrastate *interexchange traffic*." *Id.* at 16013, ¶ 1034 (emphasis added). And in ¶ 30 of the same order, the FCC said: "[n]othing in this Report and Order alters the collection of access charges paid by an [IXC] under Part 69 of the Commission's rules, when the incumbent LEC provides exchange access service to an [IXC], either directly or through service resale." *Id.* at 15515-16, ¶ 30. As the court explained in *IntraMTA I*:

> [paragraph] 1036 simply sets out the intraMTA rule; it does not mention IXCs, much less explicitly supersede the existing access charge regime between LECs and IXCs. Nor is Plaintiffs' reading of ¶ 1036 reasonable given the FCC's statement that it is defining "the local service area for calls to or from a CMRS network *for the purposes of applying reciprocal compensation obligations under section 251(b)(5)*," *Local Competition Order*, 11 [FCC Rcd.] at 16014, ¶ 1036 (emphasis added), and its clarification in ¶ 1034 that "the reciprocal compensation provisions of section 251(b)(5) for transport and termination of traffic *do not apply to the transport or termination of interstate or intrastate interexchange* traffic," *id.* at 16013, ¶ 1034 (emphasis added). Moreover, Plaintiffs' reading of ¶ 1036 cannot be reconciled with the FCC's statement in ¶ 30 that the Local Competition Order does not alter the collection of access charges paid by an IXC under Part 69 of the FCC's rules, which includes 47 C.F.R. § 69.5(b).

*IntraMTA I*, 2015 WL 7252948, at *7.

Paragraph 1043 of the Local Competition Order is consistent with the understanding that ¶ 1036 does not purport to define local service for all purposes, including for access services provided by LECs to IXCs. Paragraph 1043 provides:

> As noted above, CMRS providers' license areas are established under federal rules, and in many cases are larger than the local exchange service areas that state commissions have established for incumbent LECs' local service areas. We reiterate that traffic between an incumbent LEC and a CMRS network that originates and terminates within the same MTA (defined based on the parties' locations at the beginning of the call) is subject to transport and termination rates under section 251(b)(5), rather than interstate or intrastate access charges. Under our existing practice, most traffic between LECs and CMRS providers is not subject to interstate access charges *unless it is carried by an IXC*, with the exception of certain interstate interexchange service provided by CMRS carriers, such as some "roaming" traffic that transits incumbent LECs' switching facilities, which is subject to interstate access charges. Based on our authority under section 251(g) to preserve the current interstate access charge regime, we conclude that the new transport and termination rules *should be applied to LECs and CMRS providers* so that CMRS providers continue not to pay interstate access charges for traffic that currently is not subject to such charges, and are assessed such charges for traffic that is currently subject to interstate access charges.

Local Competition Order, 11 FCC Rcd. at 16016-17, ¶ 1043 (emphasis added) (footnotes omitted).

Further support for this understanding is found in *In re TSR Wireless, LLC* (*TSR Wireless, LLC v. U S West Commc'ns, Inc.*), 15 FCC Rcd. 11166 (June 21, 2000), *pet. for recon. dism'd*, 16 FCC Rcd. 11462, *aff'd sub. nom, Qwest Corp. v. FCC*, 252 F.3d 462 (D.C. Cir. 2001) ("TSR Wireless"), which was decided almost four years after the Local Competition Order was adopted:

> Section 51.703(b) concerns how carriers must compensate each other for the transport and termination of calls. It does not address the charges that carriers may impose upon their end users. Section 51.703(b), when read in conjunction with Section 51.701(b)(2), requires LECs to deliver, without charge, traffic to CMRS providers anywhere within the MTA in which the call originated, with the exception of RBOCs, which are generally prohibited from delivering traffic across LATA boundaries. MTAs typically are large areas that may encompass multiple LATAs, and often cross state boundaries. Pursuant to Section 51.703(b), a LEC may not charge CMRS providers for facilities used to deliver LEC-originated traffic that originates and terminates within the same MTA, as this constitutes local traffic under our rules. *Such traffic falls under our reciprocal compensation rules if carried by the incumbent LEC, and under our access charge rules if carried by an interexchange carrier. This may result in the same call being viewed as a local call by the carriers and a toll call by the end-user.*

TSR Wireless, 15 FCC Rcd. at 11184, ¶ 31 (emphasis added) (footnotes omitted).

Because Level 3 has not established that all the intraMTA wireless calls at issue are locals calls that fall within the carve-out of § 251(g), the court declines to accept the third ground of Level 3's motion.

VI

Level 3 argues fourth that, under the regulatory scheme established by Congress and the FCC, the same call cannot simultaneously be subject to access charges from one carrier and reciprocal compensation from another.[7] In support of this argument, Level 3 cites the Local Competition Order and *In re Connect America Fund, A National Broadband Plan for*

---

[7]This ground is not delineated by a separate header in Level 3's motion. To the extent Level 3 intends to advance this argument in support of another ground of its motion, the court declines to accept the argument in that context as well.

*Our Future*, Report and Order and Further Notice of Proposed Rulemaking, 26 FCC Rcd. 17663 (Nov. 18, 2011) ("Connect America Order"), both of which refer to compensation for intraMTA "traffic."  *See* Local Competition Order at 16014, ¶ 1036 ("*traffic* . . . that originates and terminates within the same MTA is subject to transport and termination rates" (emphasis added)); Connect America Order at 18043, ¶ 1007 ("intraMTA *traffic* is subject to reciprocal compensation" (emphasis added)).  According to Level 3, the FCC in the Connect America Order expressly superseded the access charge regime for long distance access traffic, subjecting this traffic instead to reciprocal compensation under § 251(b)(5).

In *IntraMTA I*, however, this court rejected the argument that the FCC's use of the word "traffic," as opposed to framing the issue as whether LECs or CMRS providers may impose access charges *on one another* for intraMTA calls, evidenced a "square rejection" of the LECs's position regarding access charges on IXCs.  *IntraMTA I*, 2015 WL 7252948, at *10 (brackets omitted).  The court held that ¶ 1007 of the *Connect America Order* does not address compensation between LECs and IXCs.  *Id.*  In its brief, Level 3 essentially reiterates the argument already raised by the IXCs in *IntraMTA I* and rejected by this court. Accordingly, for the reasons explained in *IntraMTA I*, the court declines to accept Level 3's argument that a single call cannot be subject to reciprocal compensation (e.g., between a LEC and a CMRS carrier) and access charges (between the LEC and an IXC in the middle of the call path).

* * *

For the reasons explained, Level 3's motions to dismiss are denied.

**SO ORDERED**.

March 22, 2017.

*[signature]*
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE