IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: INTRAMTA SWITCHED § <br> ACCESS CHARGES LITIGATION § <br> § <br> § <br> § <br> THIS DOCUMENT RELATES TO § <br> CIVIL ACTION NOS. § <br> § <br> 3:15-CV-0931-D, 3:14-CV-4580-D, § <br> 3:14-CV-4581-D, 3:15-CV-1179-D, § <br> 3:15-CV-0114-D, 3:14-CV-4446-D, § <br> 3:15-CV-1070-D, 3:15-CV-1102-D, § <br> 3:14-CV-4573-D, 3:14-CV-4546-D, § <br> 3:15-CV-0036-D, 3:14-CV-4424-D, § <br> 3:14-CV-4472-D, 3:15-CV-0705-D, § <br> 3:15-CV-0260-D, 3:14-CV-4564-D, § <br> 3:14-CV-4420-D, 3:14-CV-4577-D, § <br> 3:15-CV-0034-D, 3:15-CV-1071-D, § <br> 3:14-CV-4470-D, 3:15-CV-0066-D, § <br> 3:15-CV-1053-D, 3:14-CV-4547-D, § <br> 3:14-CV-4469-D, 3:15-CV-0563-D, § <br> 3:15-CV-1069-D, 3:15-CV-0142-D, § <br> 3:15-CV-1040-D, 3:15-CV-1177-D, § <br> 3:15-CV-0044-D, 3:15-CV-0020-D, § <br> 3:14-CV-4428-D, 3:14-CV-1724-D, § <br> and 3:15-CV-0040-D. § | Civil Action No. 3:14-MD-2587-D <br> (MDL No. 2587) |

MEMORANDUM OPINION
AND ORDER

Following this court's decision in *In re IntraMTA Switched Access Charges Litigation*, 2015 WL 7252948 (N.D. Tex. Nov. 17, 2015) (Fitzwater, J.) ("*IntraMTA I*"), plaintiff Sprint Communications Company L.P. ("Sprint") has amended its complaints. Defendants move to strike or dismiss the amended complaints under Fed. R. Civ. P. 12(f) and

12(b)(6). For the reasons that follow, the court grants the motions under Rule 12(b)(6) and dismisses Sprint's state-law claims with prejudice.

I

The court assumes the parties' familiarity with the background facts and procedural history recounted in its prior memorandum opinions and orders filed in this case. *See IntraMTA I*, 2015 WL 7252948, at *1-3; *In re IntraMTA Switched Access Charges Litig.*, 2017 WL 1078522 (N.D. Tex. Mar. 22, 2017) (Fitzwater, J.). In *IntraMTA I* the court dismissed plaintiffs' complaints, but permitted them to replead their state-law claims:

> Although the court is granting defendants' joint motion to dismiss, it will permit plaintiffs to replead their state-law claims. . . . In this case, the defects in Plaintiffs' federal-law claims are incurable: these claims are barred by the filed rate doctrine regardless how plaintiffs replead, because LECs are permitted under federal law to charge [interexchange carriers ("IXCs")] access fees for the access services at issue. But the court cannot say that the defects in Plaintiffs' state-law claims are similarly incurable. For example, in support of their state-law claims, plaintiffs maintain in their response that a number of defendants' state tariffs expressly prohibit access charges for intraMTA calls. Plaintiffs may therefore be able to plausibly allege a state-law claim, at least on the basis that a specific state law or a filed state tariff actually prohibits the defendant LEC from charging IXCs access charges for the intrastate intraMTA calls at issue. . . . Accordingly, within 28 days of the date this memorandum opinion and order is filed, plaintiffs may file amended complaints that replead their state-law claims.

*IntraMTA I*, 2015 WL 7252948, at *14.

On May 16, 2016 Sprint filed amended complaints.[1] It also filed a notice ("Notice") "to explain the purpose of its re-pleaded claims." P. Notice at 2. In the Notice, Sprint explains that its re-pleaded claims "are similar to the ones the Court has already dismissed," but it notes that it has "added references to state law where applicable, and removed its federal-law claims." *Id.* Sprint further explains:

> As the Court recognized, its holding with respect to the federal intraMTA rule precludes Sprint's argument that state tariffs are unlawful insofar as they require the payment of access charges. In light of the Court's ruling, and after a review of its complaints Sprint concludes that it does not wish to plead any additional causes of action beyond what it has already pleaded. *Sprint confirms that its state-law claims are based on the allegations that defendants' intrastate tariffs incorporate the federal intraMTA rule for intrastate intraMTA traffic.* Sprint believes that the Court's earlier ruling is sufficient to preserve Sprint's claims on appeal, and believes it would be entitled to stand on its original complaint and have the Court dismiss those claims with prejudice rather than re-pleading state-law claims . . . . Nevertheless, because the Court's original dismissal of Sprint's state-law claims was not final and the language in the Court's order that stated that Sprint "failed to plead a facially plausible claim," Sprint is re-pleading those claims to ensure the claims are preserved for appeal. *Sprint anticipates that the Court will dismiss them with prejudice for the reasons stated in its November 17, 2015 Order.*

*Id.* at 2-3 (emphasis added) (citations omitted).

Defendants move to strike Sprint's amended complaints under Rule 12(f). They contend that the amended complaints are inconsistent with *IntraMTA I*; that, by Sprint's own

---

[1]Plaintiffs MCI Communications Services, Inc. and Verizon Select Services Inc. elected not to file amended complaints; instead, they are standing on their currently-filed complaints.

admission, the amended complaints are unauthorized, considering that Sprint admits that the amended complaints do not identify any provision of state law or specific filed state tariff giving rise to claims independent of federal law; and that Sprint has added (without leave of court) a new factual allegation and new legal arguments that have the effect of amending Sprint's federal claims. Defendants also move to dismiss Sprint's amended complaints under Rule 12(b)(6). They contend that the court has already rejected Sprint's interpretation of federal law, and Sprint's amended state-law claims should be dismissed because the claims rely on Sprint's discredited interpretation of federal law; and that Sprint's theory that its state-law claims automatically "mirror" federal law has no support because a violation of federal law does not create a state-law claim for breach of tariff, and Sprint would have to identify a federal-law cause of action regarding intrastate charges, which it has never done. Sprint opposes defendants' motions.

II

The court considers first whether Sprint's amended complaints should be stricken in whole or in part under Rule 12(f), which permits the court to strike from the pleadings "any redundant, immaterial, impertinent, or scandalous matter."

A

Defendants contend that the court specifically stated in *IntraMTA I* that Sprint's state-law claims based on its federal law theory were invalid, and that it granted Sprint leave to amend its state-law claims, but only by identifying specific state laws or state tariffs that give rise to causes of action independent of federal law; that, in the amended complaints, Sprint

does not allege any state-law claims arising from state laws or state tariffs independent of federal law, but has instead merely re-filed the same state-law claims (based on federal law) that the court previously dismissed; that because the court did not authorize Sprint to re-file its defective state-law claims based on federal law, the amended complaints should be stricken; that even if the court allows the amendments to Sprint's state-law claims, it should strike or dismiss the parts of the amended complaints related to Sprint's federal-law claims; and that Sprint is precluded by the doctrine of judicial estoppel from changing the factual allegations underpinning its federal-law claims—i.e., alleging that it is a "transit carrier" when it previously alleged that it was an IXC.

Sprint responds that, as the court permitted it to do in *IntraMTA I*, the amended complaints identify new state laws and provide additional detail to support its claims that these laws apply. It explains that the defect the court identified in *IntraMTA I* with respect to Sprint's state-law claims was a lack of detail and a lack of citation to specific provisions of state law, and that it has addressed this defect by citing additional authorities and pleading facts that show that these authorities apply. Regarding its allegation that it is a "transit provider," Sprint contends that this allegation supports its re-pleaded *state-law claims*; that its amended complaint adds citations to authorities in Indiana, Iowa, Louisiana, Minnesota, New York, and Wisconsin for the proposition that *transiting carriers* are not required to pay access charges on intraMTA traffic; that Sprint's amended complaints do not contain any federal-law claims, so a phrase added to support state-law claims could not possibly affect Sprint's dismissed claims; that Sprint's complaints also referred to transit carriers, and Sprint

has already argued to the court that there is no distinction between IXCs and transit carriers; that, even if the specific allegation that Sprint is an IXC *or transit carrier* did not appear in Sprint's complaints, it does not constitute a new argument, affect the court's analysis of whether to dismiss Sprint's claims, or justify striking Sprint's amended complaints; and that, even if the amended complaints allege new facts, these facts are not inconsistent with facts Sprint initially pleaded, the court has not "relied" on any facts that Sprint previously alleged, and Sprint was not successful in arguing that it is entitled to recovery "as an IXC," so the doctrine of judicial estoppel does not apply.

B

The court denies defendants' motions to strike under Rule 12(f). Sprint acknowledges in its amended complaints[2] that the court has already dismissed its federal causes of action; it clearly states that it is only repleading its state-law claims; it deletes from its amended complaints its previously-pleaded federal law claims; and it only alleges claims for breach of contract based on int*ra*state intraMTA calls. To the extent Sprint has added new allegations regarding federal law,[3] these allegations are only pertinent to Sprint's contention

---

[2]Defendants and Sprint both cite the amended complaint in *Sprint Communications Company LP v. Central Telephone Company of Texas*, No. 3:14-CV-1724-D, as a representative complaint. The court will do so as well, and citations to "Am. Compl." are to the amended complaint in No. 3:14-CV-1724-D.

[3]Defendants specifically challenge ¶¶ 19-23 of Sprint's amended complaints. *See* Ds. Br. 10. But the court has compared the allegations in ¶¶ 19-23 of the amended complaints with the allegations of the complaints, and it concludes that, with the exception of the following, the cited paragraphs of the amended complaints do not contain any substantially new allegations. The exception is as follows:

that "[i]n resolving disputes within their jurisdiction, state commissions' analysis generally mirrors federal law." Am. Compl. ¶ 24. Sprint has not, as defendants maintain, "re[written] its (dismissed) federal-law claims." Ds. Br. 9. Although the new allegations relating to federal law are not what the court envisioned when it granted Sprint leave to amend to allege "a specific state law or a filed state tariff [that] actually prohibits the defendant LEC from charging IXCs access charges for the intrastate intraMTA calls at issue," *IntraMTA I*, 2015 WL 7252948, at *14, the court cannot conclude that these allegations are so unrelated to Sprint's state-law claims that they should be stricken under the authority of Rule 12(f). The court clearly permitted Sprint to amend its state-law claims. Accordingly, the court declines to strike any part of the amended complaints under Rule 12(f).

III

The court now turns to defendants' motion to dismiss under Rule 12(b)(6).

A

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the amended

---

> The FCC recognized in that 2001 decision that its prior interpretation of Section 251(b)(5) was "inconsistent" with the statutory text stating that section 251(b)(5) dos not use the term "local" but instead speaks more broadly of the transport and termination of "telecommunications," and so explained that Section 251(b)(5) applied to all calls, including "local," "intrastate," and "interstate" calls. *See In re FCC 11-161*, 753 F.3d at 1116; *Connect America Fund* at ¶ 761 (footnotes omitted).

Am. Compl. ¶ 21.

complaints "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (brackets omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive defendants' motion, the amended complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

Defendants move to dismiss Sprint's amended state-law claims under Rule 12(b)(6) on two grounds: first, that Sprint's amended state-law claims are predicated entirely on federal-law arguments, and the court has already rejected Sprint's interpretation of federal law; and, second, that even if the LECs violated federal law, Sprint has not stated a valid state-law cause of action for breach of tariff because state tariffs do not incorporate (or "embody" or "mirror") federal law, and Sprint has failed to cite any state-law authority that supports its claim that IXCs do not pay access charges when using LECs' Feature Group D access services to exchange intraMTA calls.

Sprint responds that defendants have misunderstood its argument that state law independently prevents LECs from charging access charges on intraMTA traffic. It explains that it has alleged that state law generally "mirrors" federal law, that "[*m*]*irroring* federal law is not the same as *incorporating* it, and it is apparent on their face that Sprint's state-law authorities involve the same language and concepts as the federal rule, such that they *independently* give rise to a cause of action for the same conduct." P. Br. 8. Sprint then contends:

> Sprint's complaint specifically referred to state laws and tariffs that use the same language as the federal intraMTA rule. Thus, while Sprint's state-law claims should be analyzed the same way as its federal claims, they should not be dismissed on the basis that Sprint argued that they "incorporate" federal law. As to the merits of that analysis, Sprint refers to its earlier arguments regarding the intraMTA rule.

*Id.* at 9.

C

Sprint has failed to plausibly plead any state law that prohibits LECs from charging access fees when Sprint exchanges intrastate intraMTA calls. In its amended complaints, Sprint alleges that "[s]tate regulations also often embody the same principles as the federal intraMTA rule," Am. Compl. ¶ 24, and it cites, as examples, Ohio Admin. Code 4901:1-7-12(C)(2) and Mo. Code Regs. Ann. tit. 4, § 240-29.020(24)(A) (2016). But neither of these code provisions appears to prohibit LECs—to a greater extent than do the federal statutes and regulations after which they are modeled—from charging access fees when IXCs exchange intrastate intraMTA calls.[4] And Sprint does not argue otherwise in its response.

Nor has Sprint plausibly alleged a state tariff that prohibits LECs from charging access fees when Sprint exchanges intrastate intraMTA calls. In support of its state-law claims,

---

[4]Ohio Admin. Code 4901:1-7-12(C)(2) states: "Telecommunications traffic exchanged between a LEC and *a wireless service provider* that, at the beginning of the call, originates and terminates within the same major trading area as defined in 47 C.F.R. 24.202(a), shall be subject to non-access reciprocal compensation." (emphasis added). This code provision says nothing about permitted (or prohibited) compensation arrangements between LECs and IXCs, and Sprint does not allege that (in the context of the intraMTA calls at issue in this litigation) it is a wireless service provider.

Mo. Code Regs. Ann. tit. 4, § 240-29.020(24)(A) defines MTA by reference to 47 C.F.R. 24.202(a), and it states "IntraMTA telecommunications traffic is telecommunications traffic that originates and terminates within the same major trading area (MTA). For purposes of determining whether or not a wireless-originated telecommunication is intraMTA, the location of the initial cell cite when a call begins shall be used as the determinant of the geographic location of the mobile caller." This definition says nothing about permitted compensation regimes for intraMTA calls and certainly does not prohibit LECs from charging IXCs access fees when they exchange intrastate intraMTA calls.

Sprint alleges, as an example[5]:

> Intrastate switched access tariffs . . . on file with the Texas Commission, constitute contracts between each of the Defendants and any purchaser of services from those tariffs, which includes Sprint.
>
> These Defendants are each charging Sprint switched access charges on intraMTA calls that do not qualify for such charges, in violation of their respective Texas intrastate access tariffs. To the extent the tariffs purport to allow such charges, they are unenforceable.
>
> Each of these Defendants is in breach of its respective Texas tariff provisions when it bills Sprint for intraMTA calls as they do not qualify for such charges.

Am Compl. ¶ 30-32 (paragraph numbers omitted). But as in *IntraMTA I*, Sprint has failed to plead any specific filed state tariff that the charges at issue in this litigation violate. *See IntraMTA I*, 2015 WL 7252948, at *13 ("These broad allegations could be interpreted to plead that intrastate intraMTA calls 'do not qualify for such charges' because they are prohibited by federal law, by state law, or by filed state tariffs. But without additional detail that enables the court to reasonably infer *why* plaintiffs allege that these calls do not 'qualify' for access charges, and without pleading any specific provision of state law, federal law, or a specific filed state tariff that the charges allegedly violate, plaintiffs have failed to plead a facially plausible claim.").[6] The vague and conclusory allegation that defendants are

---

[5]All of the state-law breach of contract claims in the amended complaints follow the same format and incorporate language nearly identical to the example set forth here.

[6]In some of its amended complaints, Sprint cites a state tariff that "incorporates the federal intraMTA regulations," *Sprint Communications Co. L.P. v. Bright House Networks*

charging Sprint switched access charges on intraMTA calls "that do not qualify for such charges, in violation of their respective . . . intrastate access tariffs," Am. Compl. ¶ 31, is insufficient to plausibly allege that the charges at issue in this litigation breach a specific state tariff.

Having failed to plausibly allege either a state law or a specific state tariff that prohibits LECs from charging IXCs access charges on intrastate intraMTA calls, Sprint is left with the allegation that "[i]n resolving disputes within their jurisdiction, state commissions' analysis generally mirrors federal law." Am. Compl. ¶ 24; *see also id.* ("[s]tate regulations also often embody the same principles as the federal intraMTA rule."); P. Br. 3 ("Sprint's re-pleaded state-law claims are substantially similar to the ones the Court has already dismissed: although they are independent, they are analytically the same as Sprint's dismissed federal law claims, because Sprint's state-law authorities mirror federal law."); P. Notice at 2 ("Sprint confirms that its state-law claims are based on the allegations that defendants' intrastate tariffs incorporate the federal intraMTA rule for intrastate intraMTA traffic."). But the court has already rejected Sprint's argument—which it re-urges in its

---

*Information Services (Alabama), LLC*, No. 3:15-CV-0931-D, Am. Compl. ¶ 106, and a state tariff that "defines intraMTA traffic as 'local' and subject to the local compensation regime," *id.* The court has previously rejected Sprint's attempts to plead state-law claims based on tariffs that incorporate the federal intraMTA rules, "which the court has already concluded do not prohibit LECs from charging IXCs access charges on interstate wireless intraMTA calls." *IntraMTA I*, 2015 WL 7252948, at *13 n.13.

response brief[7]—that federal law prohibits LECs from charging IXCs access charges on wireless intraMTA calls. *See IntraMTA I*, 2015 WL 7252948, at *4-11.

To the extent Sprint now alleges that it acted as an "intermediary carrier or transit provider," Am. Compl. ¶ 1, Sprint does not plead any state statute or filed state tariff that prohibits LECs from charging access charges when an "intermediary carrier or transit provider" exchanges a wireless intrastate intraMTA call. Nor does it contend that its allegation that it acted as an "intermediary carrier or transit provider" changes the court's analysis in *IntraMTA I*. In fact, Sprint maintains that "there is no meaningful difference between an IXC and a transiting carrier" and that "alleging that Sprint is a transit carrier does not change Sprint's allegation that it is an IXC." P. Br. 7. Moreover, although Sprint includes in its amended complaints citations to case law and various decisions by state public utility commissions that it contends stand "for the proposition that *transiting carriers* are not required to pay access charges on intraMTA traffic," P. Br. 5, it neither alleges in its amended complaints nor argues in its brief that any cited authority prohibits the access charges at issue in *this* case. In other words, although Sprint alleges that the charges at issue in this case "do not qualify for [switched access] charges," Am. Compl. ¶ 31, it does not allege that the reason these charges "do not qualify" is because a court or public utility commission has determined—in one of the authorities Sprint cites—that they do not.

---

[7]*See* P. Br. 3 ("Because Sprint respectfully maintains that its interpretation of the federal intraMTA rule is correct, Sprint submits that its re-filed complaints state a claim upon which relief may be given. And because that question has been extensively briefed, Sprint refers to the parties' earlier briefing in support of its re-pleaded state-law claims.").

Instead, Sprint alleges only that "[i]n resolving disputes within their jurisdiction, state commissions' analysis generally mirrors federal law." *Id.* ¶ 24.

Accordingly, for the reasons explained in *IntraMTA I* and the additional reasons explained here, the court dismisses Sprint's re-pleaded state-law claims with prejudice.

\* \* \*

For the reasons explained, the court grants defendants' motions to dismiss Sprint's amended complaints under Rule 12(b)(6), and it dismisses Sprint's state-law claims with prejudice.

**SO ORDERED**.

May 3, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE